Puerto Rico Labor Relations Board (In the name and on behalf of Carlos Luis Roselló Figueroa), Petitioner, v. Puerto Rico Telephone Company, Respondent.

No. JRT-62-11.     Decided March 11, 1965.

*J. B. Fernández Badillo, Solicitor General, José Orlando Grau, J. F. Rodríguez Rivera, Luis M. Rivera Pérez, Celia J. Canales de González,* and *Marta Ramírez de Vera* for petitioner. *Sifre & Ruiz Suria* for respondent.

Division composed of Mr. Justice Pérez Pimentel, as Chief Judge of Division, Mr. Justice Rigau, and Mr. Justice Dávila.

MR. JUSTICE DÁVILA delivered the opinion of the Court.

Carlos Luis Roselló worked for The Puerto Rico Telephone Company. He was discharged from the job by his employer because he had stolen some telephonic equipment. He complained to the Union, which contacted the employer and the case was submitted to the Grievance Committee as provided by the collective bargaining agreement.[1] The Grievance Committee, composed of two members representing the employer and two representing the Union did not reach an agreement. In accordance with the provisions of subdivision c) of § 4 of Art. XV a fifth member was designated not connected with the parties. An award was entered ordering the Puerto Rico Telephone to reinstate Roselló in his job and to reimburse to him the wages he failed to receive since his discharge.

The employer did not comply with the order. The Labor Relations Board brought action to enforce the award. The telephone company states the following reasons for not complying with the orders:

---

[1] Section 5 of Art. XV of the collective bargaining agreement in effect at the date of his discharge provided:

"a) If an employee considers unjust his layoff or discharge, he shall file a complaint with the Union.

b) In the event that the Union considers unjust the layoff or discharge of the employee also, the former shall file a complaint in writing with the Company's Director of Industrial Relations, within three (3) days following the layoff or notice of discharge of the employee.

c) The company shall have the right to call the Grievance Committee to a special meeting to settle the complaint."

1) The collective bargaining agreement had expired when the hearing before the fifth member of the Arbitration Committee was held.

2) The award was not issued by the competent arbitration committee established in Art. XV, § 4 of the collective bargaining agreement.

3) The employer requested a hearing before the arbitration committee after the fifth member had been selected so as to submit the case properly but such hearing was not held.

4) The employer was not confronted with certain evidence which the fifth member considered when entering his decision.

5) The fifth member passed on the controversy exclusively on the basis of the judgment rendered by the Superior Court acquitting Roselló of the offense charged.

Let us consider the reasons stated to determine whether the position taken by the employer is justified.

The collective bargaining agreement in effect on the date of the occurrence expired on May 7, 1962. The issue was submitted to the fifth member by the end of May when it had already expired. At the meeting held the employer's and the Union's representatives delivered to the fifth member all evidence on the case and the minutes of prior meetings at which Roselló's case was discussed. The Board, availing itself of the decisions of a master concluded that at said meeting "the fifth member made some questions to the members of the committee assembled in his office; received all documents both parties delivered to him; asked those present whether they had on objection to the admission of said documents. . . . When the meeting was about to be adjourned, one of the employer's representatives in the grievance committee indicated to the fifth member his desire for holding an additional hearing before entering the award. The fifth member answered that he would examine all the evidence the parties had delivered to him and that if he considered it necessary he would call for an additional hearing." The question submitted was clear and simple:

whether the employer was justified, under the circumstances of this case, in discharging Roselló.

1. In this case, the agreement being in effect, the established procedure to submit to the Grievance Committee created by the agreement the matter of Roselló's discharge was set in motion. When the agreement was about to expire, the Grievance Committee chose a person to become member of the committee and have the question finally settled. The agreement having expired, all parties met with the person selected and discussed the case.

■ ■ It is clear that a written submission to arbitrate the complaint under the effective agreement was unnecessary. The employer does not question this contention but holds that since the agreement had already expired a written agreement was needed to make the submission. We do not agree. The procedure commenced while the agreement was in effect. All subsequent actions are the result of the machinery set in motion when the matter was submitted to the Grievance Committee at the Union's request. The expiration of the agreement could not have the effect of putting an end to the procedures already initiated. See *Steelworkers* v. *Enterprise Corp.*, 363 U.S. 593 (1960) and *Labor Relations Board* v. *Soc. Mario Mercado e Hijos*, 74 P.R.R. 376 (1953).

2. The award entered was signed by the fifth member only. The employer challenges it on that ground. It holds that it should have been entered by the Grievance Committee in full.

■ We have already pointed out that the issue submitted was simple. The fifth member held a meeting with the other four members of the committee. He received the evidence the latter had considered in previous meetings and questioned them on the issues submitted. To a petition that another meeting be held the fifth member answered that it would be held if he deemed it necessary. As we mentioned in *Labor*

*Relations Board* v. *Orange Crush*, 86 P.R.R. 618 (1962), "In considering the matter in the Committee, the fifth member intervened by asking both parties as to their respective contentions. After amply discussing the matter in the Committee the decision of the fifth member in favor of one of the parties actually became the decision of the Committee three to two." This case presented a similar situation. The Union representatives understood that the employee should have been reinstated. Those of the employer held the opposite. The decision of the fifth member, in one sense or another definitively solved the controversy. There was no margin for concessions. Either the employee was reinstated or the decision of the employer was upheld. The vote of the fifth member, as in *Orange Crush*, resulted in a majority decision.

■ 3. Regarding the petition of the employer's representatives for a hearing before the Grievance Committee, it appears that the fifth member made it clear at the time of the request that he would hold it if after examining all documents he considered it necessary. Evidently he thought an additional hearing was unnecessary.

■ 4. Upon entering the award the fifth member refers to an attorney's letter addressed to the President of the Union informing the latter that Roselló had been acquitted of the offense charged as a result of which he was discharged. The employer alleges that it did not know about that letter and that it was not confronted with the letter when the case was heard by the Grievance Committee. But the letter mentioned only Roselló's acquittal, and certainly the employer had knowledge of this fact. The master appointed by the Board determined that the representatives for the Union showed the letter to the employer's representatives before submitting it to the fifth member.

5. The employer maintains that "the fifth member decided the issue exclusively on the basis of the decision of

the Superior Court acquitting Roselló of the offense charged." Such affirmation is not correct. The award considers the acquittal but it also states that:

". . . even independently of the judgment of the Court, the record does not disclose any evidence which could prevail in the civil field of the facts tending to show that Carlos Luis Roselló committed any fault which could impair his integrity, honesty or trustworthiness, for it is clear that Carlos Luis Roselló was employed by the telephone company on the night of the occurrence, that he was working the shift corresponding to the time when he entered into the warehouse, and that he was working for the telephone company when he went to the warehouse to get materials to make some repairs at Lugo's home, with the previous authorization of Muñoz, the Testman.

"It seems strange to the undersigned that warehouseman Emmanuelli, whom Carlos Luis Roselló supposedly tried to bribe with a 'gift' did not testify before the Board of four members who originally dealt with this case. All that is said, that Emmanuelli stated, turns out to be hearsay, in spite of the fact that warehouseman Emmanuelli is a very essential witness who could not be questioned by the board or by the parties. It does not seem illogical to us that emergency telephone repair services be rendered or have been rendered at nighttime and it seems unreasonable and unjust to us that the permanence of the employees who repair telephones could depend on the mere making or not of a requisition for two or three telephones. The record shows that Counsellor A. R. Barceló, Jr., asked the company to examine the original or a copy of the requisition made by Roselló for the material referred to in the complaint for the alleged 'antiregulatory' misappropriation on the part of Roselló without having filled out the corresponding requisition. It appears that said requisition was made. The company did not overcome the evidentiary impact of that proof nor does it appear to have successfully denied or controverted that fact. The undersigned does not believe that under the circumstances of this case there is any justification on the part of the company for the discharge. The position assumed by the company before the Board was not sincere in holding that the discharge was due to other reasons rather than to the offenses charged against Roselló in the criminal prosecu-

tion, specially since the company used two of its warehouse-men, together with other company officials, to charge Roselló with the robbery of telephones and discharge him unjustifiedly."

The petition for the enforcement of the arbitration award shall be sustained.